UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RUSSELL F. SMITH, JR.,

    Plaintiff,

v.

Case No. 2:09-CV-0955
JUDGE EDMUND A. SARGUS, JR.
MAGISTRATE JUDGE ELIZABETH P. DEAVERS

GREAT-WEST LIFE ASSURANCE
COMPANY,

    Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant Great-West Life Assurance Company's Motion for Summary Judgment (Doc. 33). For the reasons that follow, the Defendant's motion is **DENIED**.

### I. BACKGROUND

Plaintiff Russell F. Smith, Jr. ("Smith") brings this action against Defendant Great-West Life Assurance Company ("Great-West") alleging breach of contract from Great-West's decision to terminate Smith's disability benefits. Smith also alleges that Great-West acted in bad faith in the administration and the subsequent denial of the claim.

In January 1989, Smith purchased a disability insurance policy (the "policy") from Great-West, which provided for disability benefits if Smith became "totally disabled" due to "injury" or "sickness." (Doc. 33-1 at 33.) Under the policy, Smith could receive $1,250 in benefits each month until he reached the age of sixty-five. (*Id.*) Smith also purchased a Lifetime Accident Benefit Rider (the "rider"), which required the policy to continue past Smith's sixty-fifth birthday and for his lifetime if he continued to be "totally disabled due to injury" that occurred

before his sixty-fifth birthday. (Doc. 33-1 at 34.) The rider includes the following language: "A disability will not be considered due to an injury, if it is caused by a sickness or disease or by a medical or surgical treatment for such sickness or disease." (*Id.*) The terms of the rider are considered part of the policy. The policy defines "injury" as an "accidental bodily injury sustained while the policy is in force." (Doc. 33-1 at 32.) The policy defines "sickness" as a "disease or illness which first becomes evident while the policy is in force." (*Id.*)

In December 1998, Smith's sinus cavity was perforated during a dental procedure to extract a tooth, which required further oral surgery to correct.[1] (Smith Aff. ¶¶ 7–16.) Immediately following the oral surgery, Smith began to suffer from severe tinnitus. (Smith Aff. ¶¶ 14–16.) Smith asserts that his "physical and mental condition deteriorated quickly," and that he suffered from "anxiety, depression, severe mood swings, and had thoughts of suicide," and began treatment by a psychiatrist and a psychotherapist. (*Id.* at ¶ 15.) Smith ultimately resigned from his employment as a stockbroker because he could not fulfill his regular duties. (*Id.*)

In December 2000, Smith applied for benefits under the policy based on the effects of the accidental injury caused by the oral surgery in 1998. (*Id.* at ¶¶ 7–16.) Based on its review of medical records and submissions relating to Smith's psychiatric condition, Great-West approved Smith's claim for benefits in July 2001. In its July 12, 2001 letter approving benefits, Great-West recognized Smith's diagnosis of severe tinnitus but informed Smith that the benefit payments would be based primarily on his psychiatric condition.[2] (Doc. 33-1 at 8; Smith Aff. Ex. B ¶¶ 15–16.)

---

[1] Smith subsequently brought a malpractice action against the dentist who performed the surgical procedure. (Smith Dep. 57–58.)

[2] Great-West's July 12, 2001 letter approving benefits under the policy specifically states: "After review of the medical information received it appears that although there is a diagnosis of tinnitus, your primary disabling condition at this time appears to be psychiatric in nature, as such benefits will be considered under this policy due to a psychiatric condition." (Doc. 33-1 at 8.)

2

Great-West honored the policy from approximately 2001 to 2008, providing the maximum disability payment of $1,250 per month to Smith. (Compl. ¶ 3.) On or about April 7, 2006, in response to Smith's inquiry about the duration of his benefits under the policy and rider, Great-West informed Smith that his benefits would not continue for his lifetime, but would terminate in 2008 after his sixty-fifth birthday. (Doc. 33-1 at 18–20.) As part of its rationale, Great-West took the position that Smith's tinnitus was an uncovered existing "sickness" rather than a comprehensible "injury" under the rider, due to the fact that Smith had experienced mild tinnitus prior to the oral surgery in 1998.[3] (*Id.* at 16–20.)

Smith repeatedly contested Great-West's decision throughout 2006 and 2007. Great-West conducted additional reviews of Smith's claim, but continued to reaffirm its decision that Smith's tinnitus constituted a "sickness," which was not covered under the policy and rider. Effective January 15, 2008—the policy anniversary following Smith's sixty-fifth birthday—Great-West ceased making monthly disability payments to Smith. (*Id.* at 30.)

Smith filed this action on September 18, 2009 in the Fairfield County Court of Common Pleas, claiming that Great-West breached the terms of the policy and rider for wrongfully terminating his disability benefits. Great-West removed this action to this Court, and subsequently moved for summary judgment on all claims asserted by Smith.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing

---

[3] Smith experienced mild tinnitus following an accident in February 1994 when he slipped and fell on ice and fractured the orbital bone around his eye. (Smith Aff. ¶ 4.) Smith brought this to the attention of a cardiologist when he visited the Cleveland Clinic on May 10, 1994 for a routine examination regarding his blood pressure. (*Id.* at ¶ 3.) The cardiologist referred Smith to an ear, nose, and throat specialist to evaluate his tinnitus, who advised Smith that his tinnitus may spontaneously improve, which, according to Smith, it did. (*Id.* at ¶ 5.) According to his affidavit, Smith did not seek any treatment for tinnitus from the Cleveland Clinic or any other health care provider until after the dental procedure and oral surgery in December 1998. (*Id.*)

3

Great-West's motion for summary judgment, this Court must "view all facts and any inferences in the light most favorable" to Smith, the nonmoving party. *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 390 (6th Cir. 2009); *see also Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A motion for summary judgment should be denied if "there is a genuine need for trial," which turns on "whether the evidence is such that a reasonable jury could return a verdict for the plaintiff." *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 375 (6th Cir. 2002).

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading." *Viergutz v. Lucent Technologies, Inc.*, 375 F. App'x. 482, 485 (6th Cir. 2010). Instead, the party opposing summary judgment "must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine need for trial." *Id.*

### III. DISCUSSION

Great-West moves for summary judgment on all claims asserted by Smith, namely Smith's allegations that Great-West: (1) breached the disability insurance contract in failing to continue lifetime payments; and (2) acted in bad faith in administering the disability policy and the subsequent denial of benefits. The Court will address each of these arguments in turn.

**A. Breach of Contract**

Great-West first asserts that it is entitled to summary judgment on Smith's breach-of-contract claim. As this action is based upon diversity jurisdiction, the Court must apply Ohio contract law:

> It is elementary that an insurance policy is a contract, and the construction thereof, just as other contracts, words therein employed should be given their usual and ordinarily accepted meaning. It is settled also that policies of insurance which are

4

> prepared by the insurance company and which are reasonably open to different interpretations will be construed most favorably to the insured.

*Great Am. Mut. Indem. Co. v. Jones*, 144 N.E. 596, 596 (Ohio 1924) (internal quotations omitted).

The major point of disagreement between the parties is whether Smith's tinnitus constitutes a "sickness" or an "injury" under the terms of the policy and rider. The original policy, which Great-West honored, provided for disability benefits until his sixty-fifth birthday if Smith became "totally disabled" due to "injury" or "sickness." (Doc. 33-1 at 33.) The rider, which is considered to be part of the policy and is at issue in this case, provided for lifetime benefits if Smith continued to be "totally disabled due to injury" that occurred before age sixty-five. The rider includes the following language: "A disability will not be considered due to an injury, if it is caused by a sickness or disease or by a medical or surgical treatment for such sickness or disease." (Doc. 33-1 at 34.) The policy defines "injury" as an "accidental bodily injury sustained while the policy is in force." (Doc. 33-1 at 32.) The policy defines "sickness" as a "disease or illness which first becomes evident while the policy is in force." Neither the policy nor the rider further define the terms "disease" and "illness."

Great-West contends that Smith is not entitled to receive lifetime benefits because his tinnitus constitutes an uncovered "sickness" under the express terms of the policy and rider, rather than a compensable "injury," due to the fact that Smith had experienced tinnitus "well before the 1998 dental procedure." (Doc. 38 at 17–18.) Great-West points to the contract language, which defines "sickness" as a "disease or illness which first becomes evident while the policy is in force." (Doc. 33-1 at 32.) Specifically, Great-West contends that Smith's tinnitus

5

constitutes a "disease" under the policy's definition of "sickness."[4] Great-West asserts that Ohio case law has interpreted the term "disease" broadly, citing *Lindsey v. Paul Revere Life Insurance Company*, No. 94APE08-1266, 1995 WL 116694, at *2 (Ohio Ct. App. Mar. 14, 1995), in which the court quoted the definition of "disease" from Black's Law Dictionary (5 Ed. Rev. 1979) as follows:

> Deviation from the healthy or normal condition of any of the functions or tissues of the body. An alteration in the state of the body or of some of its organs, interrupting or disturbing the performance of the vital functions, and causing or threatening pain and weakness. Illness; sickness; disorder; malady; bodily infirmity. An illness or an abnormal state having a definite pattern of symptoms.

Applying Ohio's broad definition of "disease," Great-West contends that Smith's tinnitus is clearly a "disease" because it "is not a normal condition or state of the body."

Great-West also contends that Smith's tinnitus satisfies the second aspect of the policy and rider's definition of "sickness"—that it first became evident while the policy was in force. Great-West maintains that Smith "reported signs of tinnitus—ringing in the ears—off and on for nearly the decade leading up to the 1998 dental procedure, including specific episodes in 1994 and 1997." (Doc. 38 at 9.) Great-West maintains that this evidence demonstrates that Smith's tinnitus first became evident while the policy was in force, thereby constituting an uncovered "sickness" under the policy and rider. Therefore, Great-West concludes, based upon the plain and ordinary meaning of the terms of the policy and rider, Smith is not entitled to lifetime benefits under the rider and his breach-of-contract claim must fail.

Conversely, Smith contends that "sickness" is an ambiguous term under the policy and rider and does not have a plain and ordinary meaning. Smith points to Great-West's claim representative Scott Shea's ("Shea") deposition testimony, in which Shea admitted that the terms

---
[4] Great-West does not contend that Smith's tinnitus is an "illness" under the definition of "sickness" in the policy and rider.

6

are "somewhat vague." (Doc. 37-9 at 6; Shea Dep. 126.) Smith also points out that neither the policy nor the rider further define the terms "disease" and "illness." Accordingly, Smith maintains, the contract's language regarding "sickness," which includes the undefined terms "disease" and "illness," is reasonably susceptible to different interpretations and should be given the construction most favorable to the insured.

The crux of Smith's argument, however, is that his "total disability" is due to a covered "injury" under the terms of the policy and rider, rather than an uncovered "sickness." Smith maintains that Great-West honored the policy—and should continue to provide him lifetime benefits under the rider—due to an "accidental bodily injury" sustained while the policy was in force, i.e., the consequences from the December 1998 oral surgery. In support of his position, Smith offers two expert witness reports—one from his primary care physician, Dr. James W. Whetstone ("Dr. Whetstone"), and another from his treating tinnitus specialist, Dr. Stephen M. Nagler ("Dr. Nagler")—wherein both doctors opine that although Smith experienced mild tinnitus prior to 1998, his severe intrusive bilateral tinnitus was caused by the oral surgery in December 1998. (*See* Docs. 38-1 and 37-14.)[5] In Dr. Whetstone's report, he opines that, based on a review of Smith's medical records and regular evaluations of Smith over the last decade, Smith's "onset of severe bilateral tinnitus in December 1998 . . . caused significant cognitive impairment," "caused significant depression," caused Smith to undergo "both medical and psychiatric treatment" over several years, and "result[ed] in his disability." (Doc. 38-1 at 1–2.) In Dr. Nagler's report, he opines that Smith's "severe tinnitus was caused by one of the traumas associated with the [December 1998] oral surgery or was caused by the cumulative effect of several of the traumas associated with the oral surgery," based on a review of Smith's medical

---

[5] The Court notes that no objection has been raised to either Dr. Whetstone or Dr. Nagler's reports. Though the parties dispute how much weight should be given to each report, they do not dispute that these reports are part of the record that the finder of fact should consider.

7

records, physical and psychological evaluations of Smith, and a review of the depositions of the dentist and oral surgeon who performed the procedures on Smith in December 1998. (Doc. 37-14 at 1–2.) Dr. Nagler's report also states that Smith "had not experienced any difficulty with tinnitus prior to the December 1998 oral surgery; the very mild form of tinnitus exhibited by him up to that point was probably caused by noise-induced auditory damage during his teenage years and early twenties or possibly a course of chloroquine he took in the mid-1980s," and that "[s]uch mild forms of tinnitus are experienced by approximately 20% of the general population and are of no clinical consequence." (*Id.* at 2.) Dr. Nagler's report further states that "[t]he very mild form of tinnitus experienced by Mr. Smith prior to the December 1998 oral surgery did not progress to the severe intrusive level of tinnitus suffered by Mr. Smith following the December 1998 oral surgery." (*Id.* at 3.) In an additional affidavit, Dr. Nagler avers that Smith "suffered a bodily injury, specifically to his auditory system, during the oral surgical procedure. One symptom of that injury was the intrusive bilateral tinnitus for which I treated him." (Doc. 37-15 at 1.) Thus, Smith maintains, this evidence demonstrates that his "total disability" is due to an "injury" sustained while the policy was in force, rather than an uncovered "sickness."

Smith further asserts that his "total disability" "never was nor could it be due to tinnitus," because Great-West honored the policy from 2000 to 2008, based on the premise that Smith's total disability was due to a "psychiatric condition." (Doc. 36 at 9; *see also* Doc. 33-1 at 8.) In opposition, Great-West contends that Smith impermissibly changed his claim in his response to Great-West's motion for summary judgment, now alleging that he is totally disabled due to a "psychiatric condition" rather than his tinnitus, as alleged in the complaint. Great-West maintains that even if the Court were to accept Smith's changed claim, it would nevertheless nullify any liability or availability of recovery because under "the express terms of the [p]olicy,

8

its applicable riders, and Ohio law, [Smith] cannot obtain any additional benefits beyond the age of 65 due to a 'psychiatric condition,' which is not a bodily injury." (Doc. 38 at 19.)

The parties' disagreements turn on the underlying basis of the policy payments to Smith. Great-West is correct that Smith originally alleges in his complaint that payments were made to him because of his suffering from tinnitus, but later asserts in his response to Great-West's motion for summary judgment that the payments were made to him based on his "psychiatric condition." However, it appears that Smith's altered language is an attempt to match the shifting assertions by Great-West, and does not amount to a change in his underlying claim. In its July 12, 2001 letter originally approving disability benefits, Great-West recognized Smith's diagnosis of severe tinnitus but informed Smith that the benefit payments would be based primarily on his "psychiatric condition." (Doc. 33-1 at 8; Smith Aff. Ex. B ¶¶ 15–16.) In April 2006, however, as part of its rationale in denying Smith's benefits after his sixty-fifth birthday, Great-West took the position that Smith's tinnitus was the primary basis of the disability benefits, and that it constituted an uncovered existing "sickness" rather than a comprehensible "injury" under the rider, due to the fact that Smith had experienced mild tinnitus prior to the oral surgery in 1998. Great-West now takes the position that Smith's "psychiatric condition"—the original basis for which Great-West approved disability benefits under the policy in 2001—does not constitute an "accidental bodily injury" under the express language of the policy and rider, due to its non-physical nature.

In any case, the inconsistency for which both parties assert the underlying basis of the policy payments highlights a genuine issue of material fact. When Great-West originally approved disability benefits under the policy in 2001, it did not have to determine whether Smith's tinnitus constituted a "total disability" due to "sickness" or "injury" because both were covered under the language of the policy, which provided for benefits if Smith was "totally

9

disabled due to injury or sickness." At issue now, however, is the rider, which only covers "total disability due to *injury* which begins prior to age 65." (Doc. 33-1 at 34 (emphasis added).) Therefore, the rider limits coverage solely to an "injury," which is defined as an "accidental bodily injury sustained while the policy is in force."

The limiting language of the rider creates a genuine issue of material fact as to whether Smith's "total disability" is due to his tinnitus or psychiatric condition, and is thus a covered "injury" under the rider. In 2001, Great-West originally approved benefits under the policy due to Smith's psychiatric condition, although it was aware of Smith's diagnosis of tinnitus. (Doc. 33-1 at 8.) Great-West now asserts that Smith's tinnitus serves as the basis upon which to deny coverage under the rider, contending that it is an uncovered "sickness" because Smith suffered from mild tinnitus prior to the oral surgery in 1998. Alternatively, Great-West asserts that Smith's psychiatric condition would nevertheless nullify coverage because it does not constitute an "accidental bodily injury," due to its non-physical nature.

In contrast, Smith has presented evidence in support of his position that his "total disability" is due to an "accidental bodily injury sustained while the policy is in force," as required for coverage under the rider. Smith has presented expert witness reports from his treating doctors, as discussed above, wherein both doctors opine that the oral surgery in 1998 caused Smith's debilitating tinnitus. The reports further opine that his tinnitus caused significant cognitive impairment, depression, and psychological problems. Smith has also presented an affidavit from his treating tinnitus specialist, in which he avers that Smith's tinnitus is a bodily injury sustained from the oral surgery in 1998.

Based on the evidence presented, the Court concludes that Smith has presented sufficient evidence in support of his position that his "total disability" is due to an "accidental bodily injury" sustained from the oral surgery in 1998 while the policy was in force. Since the evidence

10

of record creates a genuine issue of material fact as to which medical condition Smith is considered to be "totally disabled"—whether it be his tinnitus or psychiatric condition—the Court denies Great-West's motion for summary judgment as to Smith's breach-of-contract claim.

## B. Bad Faith

Great-West also asserts that it is entitled to summary judgment on Smith's bad-faith claim. Smith claims that Great-West acted in bad faith by: (1) denying Smith's claim without conducting an adequate investigation of Smith's medical condition; (2) attempting to re-characterize its original basis for determining the existence of a disability in order to avoid continuing disability payments to Smith for his lifetime; and (3) acting arbitrary and capriciously in its administration of Smith's claim and the subsequent denial. (Compl. ¶ 11.) Smith further contends that there was an unreasonable delay of two and a half years in the claim-handling and evaluation process.

Ohio law "imposes on the insurer a duty to act in good faith in the handling and payment of the claims of its insured." *Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, 1326 (Ohio 1983). "[A]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 400 (Ohio 1994). In sum, the question of bad faith rests on whether the insurer's conduct was unreasonable under the circumstances.

Great-West contends that it had a reasonable justification for denying Smith's benefits after he reached the age of sixty-five, given the express language of the policy and rider, Smith's history of tinnitus, and the definitions of the terms "disease" and "accidental bodily injury" under Ohio law. (Doc. 33 at 15.) Great-West maintains that summary judgment on Smith's bad-faith

11

claim is warranted because its interpretation of the term "disease" under the policy and rider to include Smith's tinnitus was not unreasonable.

At this juncture, the Court cannot say that Great-West's only shortcoming was that, in concluding that it was permitted to terminate Smith's disability benefits, it erroneously chose a reasonable interpretation of the term "disease" or "sickness." Smith has set forth sufficient evidence to create a genuine issue of material fact as to whether he is "totally disabled" due to an "injury" under the terms of the rider. Because the position taken by Great-West has changed during the terms of the policy, the Court cannot say that summary judgment is warranted. As such, the Court denies Great-West's motion for summary judgment as to Smith's bad-faith claim.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that there is a material fact in dispute as to whether Smith's "total disability" is due to an "accidental bodily injury," and that the evidence before the Court presents sufficient disagreement so as to require submission to a fact finder. Accordingly, Defendant's Motion for Summary Judgment (Doc. 33) is **DENIED**.

**IT IS SO ORDERED.**

3-30-2012
DATED

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE

12